IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| HELEN DOWDY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:04cv1056 |
| | ) | [WO] |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Helen Dowdy ["Dowdy"] filed this action seeking review of a final decision of the defendant ["Commissioner"] (Doc. # 1) pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) (2004). Upon review of the record and the briefs submitted by the parties, the court concludes that the Commissioner's decision should be affirmed.

## I. FACTS AND PROCEDURAL HISTORY

Dowdy claims she became disabled on 4 October 2002 due to "degenerative joint disease related to arthritis in all joints," which causes "constant pain" (R. 87, 101). She contends that she suffers from "arthritis all over, in joints, knees, shoulder, back mainly [sic]" (R. 110).

Prior to her alleged onset date and continuing thereafter in a part-time capacity, Dowdy was employed as a "unit secretary" in a hospital and she had previously worked as a "certified nursing assistant[,] . . . home health aide[,] . . . and a food service worker" (R. 41-

43).  She graduated from high school and took some college courses, completing the "optical lab technology" program at Wallace Community College (R. 36).

Dowdy applied for disability insurance and supplemental security income benefits in November 2002 (R. 87-89, 260-262).  Her application was denied initially (R. 63-65), and a hearing before Administrative Law Judge ["ALJ"] Alan E. Michel resulted in an unfavorable decision (R. 12-23).  After receiving additional evidence, the Social Security Administration's ["SSA"] Appeals Council ["AC"] nonetheless denied her request for review (R. 5-6).  Thus, the ALJ's opinion became the final decision of the Commissioner, and Dowdy filed this timely lawsuit (Doc. # 1).

## II.   STANDARD OF REVIEW

The district court's review of the Commissioner's decision is a limited one. Reviewing courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [Commissioner]." **Miles v. Chater**, 84 F. 3d 1397, 1400 (11th Cir. 1996) (citing **Bloodsworth v. Heckler**, 703 F.2d 1233, 1239 (11th Cir. 1983)).  The court must affirm the Commissioner's decision "if it is supported by substantial evidence and the correct legal standards were applied," **Kelley v. Apfel**, 185 F.3d 1211 (11th Cir. 1999) (citing **Graham v. Apfel**, 129 F. 3d 1420, 1422 (11th Cir. 1997)).[1]  This is true despite the existence

---

[1]In **Graham v. Apfel**, 129 F. 3d at 1422, the Court of Appeals stated that:

Substantial evidence is described as more than a scintilla, and means such relevant evidence as a

of substantial evidence "contrary to the findings of the ALJ." ***Barron v. Sullivan***, 924 F.2d

227, 230 (11th Cir. 1991).  "There is no presumption, however, that the Commissioner

followed the appropriate legal standards in deciding a claim for benefits or that the legal

conclusions reached were valid." ***Miles***, 84 F. 3d at 1400 (citations omitted).


### III.   DISCUSSION

*A.    Standard for Determining Disability*

An individual who files an application for Social Security disability benefits must

prove that she is disabled, which means that she is unable "to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A) (2004); *see also*

20 C.F.R. §§ 404.1512(a), 416.912(a) (2004).

The regulations governing disability determinations provide a five-step sequential

evaluation process that the ALJ must follow to determine whether a claimant has proven that

she is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also **Ambers v. Heckler***, 736 F.2d

1467, 1469 (11th Cir. 1984); ***Williams v. Barnhart***, 186 F. Supp. 2d 1192, 1195 (M.D. Ala.

2002).  If the claimant is not currently engaged in substantial gainful activity, the ALJ must

---

reasonable mind might accept as adequate to
support a conclusion.  *See **Richardson v. Perales***,
402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d
842 (1971).

determine whether she suffers from a severe impairment (i.e., a medically determinable condition that significantly limits the claimant's ability to perform basic work-related activities) that has lasted or is expected to last 12 months or more.  §§ 404.1509, 416.909, 404.1520(a)(4)(I)-(ii), 416.920(a)(4)(I)-(ii).  If so, and the impairment(s) is of such severity as to meet or medically equal a condition described in the SSA's "Listing of Impairments," then the claimant will be found to be disabled.  §§ 404.1520(a)(4)(iii); 404, subpt. P, app. 1; 416.920(a)(4)(iii).

If the claimant's severe impairment(s) does not automatically qualify her for disability benefits, the ALJ must then assess her residual functional capacity ["RFC"], which represents "the most [a claimant] can still do despite [her] limitations."  §§ 404.1545(a), 416.945(a). Considering her RFC, the ALJ must determine whether the claimant is able to perform the physical and mental demands of her past relevant work.  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If not, the ALJ must determine whether, considering her RFC, age, education, and past work experience, the claimant is capable of performing other jobs available in significant numbers in the national economy. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c).

**B.**     *Application of the Standard: The ALJ's Findings*

After discussing the legal standards and the evidence in the record, the ALJ made the following findings:

1.     The claimant met the disability-insured status of the Act

[sic] on October 4, 2002, the date that the claimant alleges that she became unable to work, and has acquired sufficient quarters of coverage to remain insured through at least the date of this decision.

2. There is no evidence that the claimant has engaged in substantial gainful activity at any time since the alleged onset date of October 4, 2002.

3. The claimant has "severe" impairments of degenerative joint disease, status post right total knee arthroplasty and status post subacromical decompression, subacromial [sic] bursectomy, debridement of rotator cuff and partial rotator cuff tear repair; however, considered singly or in combination, these impairments do not meet or equal in severity the appropriate medical findings contained in 20 CFR 404, Appendix 1 to Subpart P (Listing of Impairments).

4. The claimant's other alleged impairments of irritable bowel syndrome, hypertension, fiber cystic breast disease and sleep disorder are not "severe" impairments as they were not established by medical findings, based on medically acceptable clinical or laboratory technique [sic], or were not shown to have lasted for the duration period. Similarly, the claimant does not have a severe mental impairment.

5. The claimant's allegations regarding her limitations are not credible to the extent all work activity would be precluded. There is no persuasive evidence of continuing, work-affecting, side effects of medication.

6. The claimant is fifty years old which [sic] is considered "closely approaching advanced age"; she has a high school education plus some college and vocational training (20 CFR §§ 404.1563 and 416.963).

7. The claimant retains the residual functional capacity to perform semi-skilled, sedentary work with a sit-stand option.

  8.  The claimant is unable to perform her past relevant work (20 CFR 404.1565 [sic] and 416.965).

  9.  The claimant is able to make a successful vocational adjustment to sedentary, semi-skilled jobs which exist in significant numbers in the national economy.

  10. The claimant was not under a "disability" as defined in the Act, at any time through the date of this decision (20 CFR §§ 404.1520(e) and 416.920(e)).

(R. 22-23).  Thus, Dowdy failed at step five because the ALJ determined that she could perform work available in significant numbers nationally.

  Dowdy disagrees and argues, generally, that the ALJ's decision is not supported by substantial evidence in the record (Doc. # 17, p. 1).  Specifically, Dowdy raises only one issue by contending that the ALJ's opinion contains an irreconcilable and unexplained internal conflict that requires reversal and remand.  For the reasons discussed herein, the court disagrees with Dowdy, finds her argument factually and legally baseless, and concludes that the ALJ's thorough, thoughtful and well-explained opinion is in every respect supported by substantial evidence in the record.

## C. *The Alleged Conflict*

  Dowdy contends that the ALJ's finding that her shoulder impairment was severe, which she defines as meaning that it "significantly limits basic work activity," conflicts with his conclusion that Dowdy's RFC would allow her to perform "unskilled to semi-skilled work at the sedentary level of exertion with a sit/stand option", because his assessment did

not expressly consider limitations resulting from her "severe" shoulder impairment (Doc. #

17, pp. 8-11).  Dowdy's argument ignores the facts and case law addressing this very point.

Contrary to Dowdy's suggestion, the ALJ's conclusion that Dowdy could lift 10

pounds, "occasionally lift[] or carry[] articles like docket files, ledgers, and small tools" and

sit for two hours at a time with the option of sitting or standing was not a product simply of

"[Dowdy's] knee impairment" (R. 20; Doc. # 17, p. 10).  *See* 20 C.F.R. § 404.1567(a) (2005)

(discussing what is meant by "sedentary work").  His opinion discussed in detail all of the

"relevant medical and other evidence," and Dowdy's argument, which focuses only on the

standing/walking limitation, inexplicably ignores the lifting limitation, which was based on

Dowdy's own testimony (R. 20).  *See* 20 C.F.R. § 404.1545 (discussing evidence used to

evaluate a claimant's RFC).

His perceived failure to discuss specifically any additional limitations that conceivably

*could* result from Dowdy's shoulder impairment reflects the reality that no evidence in the

record suggests any additional limitations, just as the disability specialist concluded in a

detailed RFC evaluation (R. 229-236).  The ALJ is not required to assign specific functional

limitations to each impairment and address them individually, and he is certainly not required

to discuss limitations for which there is no supporting evidence.  *See* 20 C.F.R. § 404.1545(e)

(describing the RFC as an evaluation of the "total limiting effects" of the claimant's

impairments).

In this case, the ALJ determined that  Dowdy's impairments, together, limited her to

performing sedentary work, which itself reflects a finding that Dowdy suffered from "severe

functional limitations." Soc. Sec. Rul. 96-9p. Thus, his RFC at the fourth step, as a matter of fact, does not conflict with his second-step conclusion that her shoulder impairments were severe.

Moreover, as a matter of law, impairments considered "severe" for the purpose of step two of the sequential evaluation do not necessarily "impose significant work-related limitations." *Walters v. Barnhart*, 184 F. Supp. 2d 1178, 1184 (M.D. Ala. 2001). The court's reasoning in *Walters* was based on the well-established principle that step two "is a threshold inquiry which allows only 'claims based on the most trivial impairment to be rejected.'" *Id.* (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). Therefore, as the *Walters* court concluded, the question for the court is simply whether the ALJ's well-explained RFC assessment is supported by substantial evidence in the record.[2]

---

[2]In her reply brief, Dowdy argues that *Walters* is "unavailing" because in that case "the ALJ fully advised the vocational expert of the work-related functional limitations that Plaintiff's severe mental impairments imposed" (Doc. # 20, p. 1). Her argument ignores the forest, i.e., *Walters*' larger point that the standard at step two is different than, and thus incomparable to, the standard applied in steps four and five of the ALJ's analysis.

Dowdy also cites to *Peterson v. Chater*, 96 F.3d 1015, 1016 (7th Cir. 1996) in support of her argument. *Peterson*, however, presented a true conflict within the ALJ's opinion. The ALJ in that case had determined that the claimant could perform the full range of sedentary to light work, but later stated that he could not perform work that required prolonged sitting, standing or walking. Quoting Social Security Ruling 83-12, the Court of Appeals noted that

> the Social Security Administration has determined that an individual who 'may be able to sit for a time, but must then get up and stand or walk for awhile [sic] before returning to sitting . . . is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work . . . or the prolonged standing or walking contemplated for most light work.' So if . . . [the claimant] is not capable of prolonged sitting, standing, and walking, he is not capable of doing sedentary or light

As noted, Dowdy failed to present any medical evidence that her shoulder condition limited her in any way following surgery to repair a torn rotator cuff.  The surgery, which took place four days after her alleged onset date, appears to have been successful, as indicated by records from Dowdy's follow-up doctor's visit approximately six weeks later. Although Dr. James R. Andrews, who performed the surgery, noted "significant . . . weakness," also noted was Dowdy's "good range of motion," and Dr. Andrews was "very pleased with her progress" (R. 207-211).

Following this visit, which was her last with Dr. Andrews, Dowdy's only complaint regarding her shoulder was to a consultative psychological examiner.  There is no evidence that she experienced difficulty with or sought any further treatment for her shoulder, and it was Dowdy's burden, after all, to provide such evidence.  20 C.F.R. § 404.1545(a)(3).

For the ALJ to have found her shoulder-related impairments to be "severe" as an initial matter, and later to have adopted Dowdy's own testimony that she could lift only 10 pounds, demonstrates the ALJ's generous consideration of her claims.  That he gave Dowdy "the benefit of all doubt,"  as his opinion states, is unquestionable (R. 20).[3]

Dowdy does not challenge any other aspect of the ALJ's RFC assessment or his

---

work – contrary to the administrative law judge's other finding.

*Id.*  As already discussed, no conflict exists in the case before the court.

[3]Further evidence of this fact includes the ALJ's decision not to point out the obvious inconsistency between Dowdy's hearing testimony that she continued to work only 15 hours per week and the statement she previously made to the consultative psychological examiner that she was working 25 hours per week. (R. 42, 212-214).

broader opinion.  Nevertheless, a thorough review of the evidence in the record compels the

court to conclude that both are strongly supported by substantial evidence in the record.


## IV.   CONCLUSION

Therefore, it is hereby

ORDERED that the Commissioner's decision be and is AFFIRMED.

Done this 4th day of January, 2006.


/s/ Vanzetta Penn McPherson
VANZETTA PENN MCPHERSON
UNITED STATES MAGISTRATE JUDGE